UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDREW HILLMAN, *et al*.,

                    Plaintiffs,

v.                                                     Civil Action No. 1:10-cv-08315-JGK

RINGLEADER DIGITAL, INC., *et al*.,

                    Defendants.

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION
FOR APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iv

BRIEF IN SUPPORT OF MOTION FOR  APPROVAL OF CLASS ACTION
       SETTLEMENT ....................................................................................................... 1

I.     NATURE OF THE LITIGATION .................................................................... 4

     A.  Overview of Plaintiffs' Claims ................................................................. 4

     B.  Defendants' Position ................................................................................. 4

II.    SETTLEMENT TERMS ................................................................................ 5

     A.  Class Definition ......................................................................................... 5

     B.  Injunctive Relief ....................................................................................... 5

     C.  Release ....................................................................................................... 7

     D.  Incentive Awards ...................................................................................... 7

     E.  Attorneys' Fees ......................................................................................... 7

III.   APPROPRIATENESS OF CERTIFICATION PURSUANT TO  RULE
     23(b)(2) FOR SETTLEMENT PURPOSES ................................................. 7

     A.  Predominance of Injunctive Relief .......................................................... 7

     B.  Nothing More Required for This Rule 23(b)(2) Settlement, Including Notice ........... 8

IV.   SETTLEMENT WARRANTS FINAL APPROVAL ..................................... 9

     A.  Complexity, Expense and Duration of Litigation ..................................... 10

     B.  Reaction of Class to Settlement ................................................................ 11

     C.  Stage of Proceedings and Discovery Completed ....................................... 11

     D.  Risks in Establishing Liability and Damages ........................................... 12

     E.  Risks in Maintaining Class Action Status ................................................ 12

     F.  Ability of Defendants to Withstand Greater Judgment ............................. 13

     G.  Reasonableness of Settlement Fund .......................................................... 13

      H.  Experience and Adequacy of Proposed Class Counsel .................................. 14

**V.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES ................................. 15**

      A.  Lodestar Method Calculation Shows Reasonableness of Plaintiffs' Request ............ 15

      B.  Counsel's Time and Labor ............................................................ 17

      C.  Magnitude and Complexity of Litigation ................................................ 18

      D.  Litigation Risk ...................................................................... 18

      E.  Quality of Representation ............................................................. 19

      F.  Requested Fee in Relation to the Settlement ............................................ 20

      G.  Public Policy Considerations .......................................................... 20

**VI.   CONCLUSION ........................................................................ 22**

# TABLE OF AUTHORITIES

**Cases**

*Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998)............................................ 8

*Cinelli v. MCS Claim Services, Inc.*, 236 F.R.D. 118, 122 (E.D.N.Y. 2006) .............................. 12

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974)............................................ 10

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470-71 (2d Cir. 1974) ..................................... 18

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010) ........................ 20

*Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 244 (E.D.N.Y. 2010) ........................ 21

*Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d. Cir. 2000) ........................... 16, 19

*Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 & 582 (2004)....................................... 16

*Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 20-21 (W.D.N.Y. 1994)....................... 7, 8

In re *"Agent Orange" Prod. Liab. Litig.*, 818 F.2d 226, 232 (2d Cir.1987) ................................. 19

*In re Lloyd's American Trust Fund Litig.* 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at
    *80 (S.D.N.Y. Nov. 26, 2002)................................................................................................. 18

*In re Painewebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) .................... 12, 13

*In re RJR Nabisco,* M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20
    (S.D.N.Y. Aug. 24, 1992)....................................................................................................... 16

*In re Telik, Inc., Sec. Litig.*, 576 F.Supp.2d 570, 593 (S.D.N.Y.2008)................................. 16, 18

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004) ................................ 11

*In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd,* 798 F.2d 35
    (2d Cir. 1986) ........................................................................................................................ 15

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) ........................................................ 21

*Maley v. Del Global Tech. Corp.,* 186 F. Supp.2d 358, 373 (S.D.N.Y 2002) ............................ 16

*McBean v. City of New York*, 233 F.R.D. 377, (S.D.N.Y. 2000).................................................. 20

*McDaniel v. County of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010) ..................................... 16

*Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 259 (M.D.N.C. 2007). ........................ 9

*Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 163-164 (2d Cir. 2001) ...................... 7

*See In re Omnivision Tech. Inc.*, 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008)......................... 13

*Sims v. Bank of America Corp.*, No. 06-CV-5991, 2008 WL 479988 *6 (E.D.N.Y.) ........................ 9

*Strougo v. Bassini*, 258 F. Supp. 2d 254, 263 (S.D.N.Y. 2003) .................................................... 15

*Torres v. Gristede's Operating Corp.,* 2010 WL 5507892 *4 (S.D.N.Y.) ................................... 10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.2005) ................................. 16

*Washington Fed. Sav. & Loan Ass'n v. Vill. Mall Townhouses, Inc.,* 90 Misc. 2d 227, 231, 394

    N.Y.S.2d 772, 776 (N.Y. Sup. Ct. 1977)................................................................................ 17

*Weiss v. Mercedes-Benz of N. Am., Inc.* 899 F. Supp. 1297, 1304 (D.N.J. 1995) ...................... 16

*Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 253 (3d Cir. 1975)........................................... 8


**Rules**

Federal Rule of Civil Procedure 23(g)(1) ..................................................................................... 16

Federal Rule of Civil Procedure 23(b)(2) ....................................................................................... 1

**BRIEF IN SUPPORT OF MOTION FOR**
**APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiffs respectfully request the Court's approval of this proposed class action settlement (the "Settlement"), based on several weeks of direct preliminary discussions, an agreement-in-principal achieved in a face-to-face, private mediation process, and finalization after more than an additional month of vigorous negotiation. Through a resolution pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure (the "Rules"), the specific, complained-of conduct is addressed in the Settlement through injunctive relief provisions that apply to the class as a whole. Plaintiffs seek injunctive relief to prevent future harm resulting from Defendants' alleged acts, and this solution provides sufficient relief that remedies the problems alleged in the complaints. This relief is to be automatically implemented by Ringleader Digital, without any need for action by class members. More importantly, this Settlement does not release any class members' claims for damages, only requiring such releases for the named Plaintiffs themselves. While Rule 23(b)(2) does not require notice or a formal final fairness hearing, the Parties must still fully disclose the Settlement terms to the Court, and obtain the Court's approval of the Settlement. Thus, Plaintiffs file this Motion seeking such approval.

This lawsuit (the "NY Ringleader Litigation") was filed on November 3, 2010, by Plaintiffs Andrew Hillman, Marissa Dean, Dawn Harbin, Stephanie Owens, Ryan Groeneweg, Billy Gueringer, Maulik Parikh, Richard Weiner, Steve Williams, G.G., a minor by and through parent Rhonda Gueringer, and J.N., a minor by and through parent Semyon Narosov on behalf of themselves and similarly situated consumers (the "Class" or "Class Members") whose mobile device use was tracked by Defendant Ringleader Digital, Inc. ("Ringleader") and its website affiliates

(collectively the "Defendants") using Digital Global User Identification ("RLDGUID") technology.

On September 16, 2010, a similar putative class action lawsuit was filed in the United States District Court for the Southern District of California by Plaintiffs Charlie Aughenbaugh, Tony Weber, and Brooke Stafford. The Cause Number for that litigation is 8:10-cv-01407-CJC – RNB ("the California Litigation").

Beginning in October 2010 and continuing throughout November and December 2010 and January 2011, counsel in this litigation and counsel in the California Litigation have negotiated the settlement terms being proposed to the Court by this Motion. Those negotiations culminated in mediation on November 23, 2010 before mediator Rodney A. Max.

As part of the terms of the Settlement (which resolves all lawsuits arising from Ringleader's RLDGUID technology), the Parties agreed to transfer the California Litigation to this Court for consolidated proceedings. A Stipulation to Transfer Venue is being filed in the California Litigation concurrently with the filing of this Motion. Furthermore, one of the counsel for the California Plaintiffs is making an appearance in this action (as reflected in the signature block below) for the purposes of presenting this Motion for the Court's consideration. For purposes of this Motion, all further references to Plaintiffs and counsel refer to the Plaintiffs ("Named Plaintiffs") and counsel in both lawsuits.

In these lawsuits, Plaintiffs allege exploitation of software on consumers' mobile devices for the purpose of tracking their Internet activities and personal information. According to Plaintiffs, Defendants failed to notify Plaintiffs and the Class that this information was being accessed and databases of their information were being created and maintained without their knowledge or

consent. Moreover, Plaintiffs allege that consumers were unable to delete these databases or RLDGUIDs.

The Settlement specifically redresses the core of Plaintiffs' grievances in an aggressive manner. Regarding the privacy implications of consumers' data, Ringleader has agreed to develop, and then abide by, data-specific industry standards for the privacy and information security of mobile device advertising information. In addition, Ringleader will delete all information collected via its client-resident RLDGUID from mobile device users who have opted out of the Ringleader mobile advertising platform. Ringleader will also abide by Worldwide Web Consortium (W3C) industry standards relating to the storage of the Ringleader mobile advertising platform RLDGUID on mobile devices.

The Settlement also provides for injunctive relief provisions regarding notice to consumers. Ringleader has agreed to clarify opt-out language for its mobile advertising platform to ensure users have a clear understanding of the terms. Ringleader will also require all mobile publishers with which Ringleader Digital agrees to provide its targeted advertising technology to comply with notice standards modeled on those described in the NAI's 2008 Code. The Settlement provides for specific components to the required notice and includes a link to Ringleader's opt-out mechanism.

Ringleader shall pay, subject to the Court's approval, an incentive award totaling thirty thousand dollars ($30,000) to be divided among the Named Plaintiffs, and attorneys' fees and expenses in an amount of $670,000 (a lodestar multiplier of 1.75), as agreed at mediation and set forth in the Settlement Agreement. In exchange for the broad injunctive relief and incentive awards, the Named Plaintiffs agree to individually release Defendants from claims related use of

the RLDGUID. For the reasons outlined in more detail below, Plaintiffs contend that the outlined Settlement is fair, reasonable, and adequate and respectfully request Court approval.

## I.   NATURE OF THE LITIGATION

### A.   Overview of Plaintiffs' Claims

Plaintiffs and members of the Class use their mobile devices to, *inter alia*, visit websites (including Defendants' websites), check and send emails, and text. Mobile advertising has become an almost $3 billion a year industry. In an effort to gain an advantage in this market, advertisers, website publishers, and ad networks constantly seek new ways to track their website users and present them with targeted advertising relevant to their interests as expressed in their browsing habits. Because cookies, the traditional method of tracking users, are not as useful on mobile devices, Ringleader came up with a better way to track mobile device users. Ringleader, using HTML5 software, created a database on the mobile devices of consumers who visited its affiliates' websites, downloaded additional tracking code, and configured a Unique Device Identifier ("RLDGUID") to better track consumers. This was done for the purpose of systematic and continuous surveillance of consumers' mobile device habits.

Ringleader Digital's tracking code allowed access to, and disclosure of, consumers' personal information, including personal identifying information. Ringleader Digital's actions circumvented users browser controls for managing web privacy and security, and was done without the notice or consent of consumers.

In this Settlement, Plaintiffs seek injunctive relief to prevent unpermitted tracking of their online activities and use of their personally identifying information.

### B.   Defendants' Position

At all times, Defendants have denied and continue to deny (1) each and all of the claims and allegations of wrongdoing made by the Plaintiffs and Class Members in the two actions and

maintains furthermore that it has meritorious defenses; (2) all charges of wrongdoing or liability against it arising out of any conduct, statements, acts or omissions alleged, or that could have been alleged, in the two actions; and (3) the allegations that Plaintiffs or any Class Members were harmed by any conduct by Defendant alleged in the two actions or otherwise.

## II.   SETTLEMENT TERMS

The key terms of the Settlement are as follows:

### A.   Class Definition

The proposed class of persons to be benefited by the Settlement is as follows:

> All individuals or entities in the United States who, from September 16, 2008 through the date of class certification, had a Ringleader Digital database or any other identifying tag or mark placed on their mobile device by Ringleader Digital.

### B.   Injunctive Relief

The principal components of the proposed Settlement address important, unresolved privacy issues raised by Plaintiffs. Specifically, the Settlement would require, upon final approval of the Settlement and entry of final judgment, the following injunctive relief:

    i.    Ringleader Digital will use commercially reasonable efforts to engage with the Mobile Marketing Association to develop data-specific industry standards for the privacy and information security of mobile device advertising information—that is, standards governing the collection, use, and transfer of information from and about mobile device users that is passed from publishers of websites designed for use with mobile devices to service providers such as Ringleader Digital by means of mobile device-based web advertisement requests. If the Mobile Marketing Association successfully develops such data-specific industry standards, Ringleader Digital will abide by them.

    ii.    Ringleader Digital will delete and/or cause to be deleted all information in its possession and/or control that has previously been collected using the mobile-device-resident Ringleader Digital Global User Identification ("RLD RLDGUID") from mobile device users who have opted out of the Ringleader Digital mobile advertising platform.

iii.   Ringleader Digital will abide by all Worldwide Web Consortium (W3C) standards that apply to storage of the Ringleader Digital mobile advertising platform RLDGUID on mobile devices.

iv.   Ringleader Digital shall refer to and, where possible, provide a hyperlink to the Ringleader Digital privacy policy in the database description for any Ringleader Digital database stored on a user's mobile device, to the extent permitted by mobile device operating system.

v.   Ringleader Digital will clarify opt-out language for its mobile advertising platform to the extent necessary to ensure mobile device users are provided with clear notice of the means to opt out via the RLD RLDGUID, the means to preserve their opt-out choice, and the effect of opting out.

vi.   Ringleader Digital will not perform best match analysis or otherwise attempt to uniquely identify mobile device users using information it acquires from the mobile devices whose users have opted out via the RLD RLDGUID of the Ringleader Digital mobile advertising platform.

vii.   For all mobile publishers with which Ringleader Digital agrees to provide its targeted advertising technology, Ringleader Digital shall require by contract that such entity comply with notice standards that substantially conform on those described in the Network Advertising Initiative's ("NAI") Self-Regulatory Code of Conduct (the "2008 Code"). In particular, Ringleader Digital shall require, by contract, that the owner or operator of a website for which Ringleader Digital provides targeted advertising services shall clearly and conspicuously post notice, or ensure that such notice be made available in a clear and conspicuous manner on the website where data are collected for targeted advertising purposes. Such notice shall contain (1) a statement of the fact that targeted advertising is occurring; (2) a description of types of data that are collected for targeted advertising by Ringleader Digital; (3) an explanation of how, and for what purpose, that data will be used or transferred to third parties; and (4) a conspicuous link to Ringleader Digital's proprietary opt-out mechanism.

viii.   Ringleader's opt-out database will carry a "0" modifier to indicate opt-out status.

These injunctive terms from the proposed Settlement allow class members to enjoy prompt, meaningful relief.

C.      **Release**

There is no Class release of any claims for actual damages involved in this settlement. Since the issues of this litigation are fully resolved as a result of the requested injunctive relief, the Parties seek certification and approval under Rule 23(b)(2).

D.      **Incentive Awards**

The Settlement provides for the payment of $30,000 in incentive awards to be divided equally among the 13 Named Plaintiffs set forth in the Settlement Agreement. Not only have the named plaintiffs cooperated and committed their own time and effort in assisting counsel resolve this matter, but each of the named plaintiffs are executing a full release as part of the settlement.

E.      **Attorneys' Fees**

The Settlement also provides that Ringleader Digital will pay a total of six hundred seventy thousand dollars ($670,000), as attorneys' fees and costs to Class Counsel. Ringleader Digital agrees that this amount is fair and reasonable for the effort expended in the prosecution in this case.

### III.   APPROPRIATENESS OF CERTIFICATION PURSUANT TO RULE 23(b)(2) FOR SETTLEMENT PURPOSES

A.      **Predominance of Injunctive Relief**

Certification pursuant to Rule 23(b)(2) is appropriate where, as here, injunctive relief represents the "predominant" form of relief sought by the Class. *Robinson v. Metro-North Commuter R.R.*, 267 F.3d 147, 163-164 (2d Cir. 2001); *see Halford v. Goodyear Tire & Rubber Co.*, 161 F.R.D. 13, 20-21 (W.D.N.Y. 1994) ("Rule 23(b)(2) certification is 'intended to reach situations where a party has taken an action or refused to take action with respect to a class, and final relief of an injunctive nature or of a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate.'") (*quoting* Fed. R. Civ. P.

23(b)(2) Advisory Committees Note ,1966 amendment). Plaintiffs seek relief protecting the Class from Defendants' tracking of consumers' behavior via their mobile devices. The injunctive relief provided by this Settlement addresses the predominantly injunctive relief sought herein.

Rule 23(b)(2) certification requires satisfaction of two conditions, both of which are met here. First, Ringleader Digital's alleged conduct is "'generally applicable'" to the class as a whole. *Halford*, 161 F.R.D. at 20. As described above, Plaintiffs allege that Ringleader Digital tracked mobile device users and obtained personal information regarding all people whose mobile devices included a Ringleader Digital database—precisely the population the proposed Class encompasses here. Second, "final injunctive . . . relief must be requested for the class." *Id.* It is, as the Settlement terms confirm. For these reasons, the Parties respectfully submit that the Court should certify the proposed Class for purposes of this Settlement.

**B.      Nothing More Required for This Rule 23(b)(2) Settlement, Including Notice**

Federal courts greatly prefer certification under Rule 23(b)(2) to alternative class certification forms because of "its superior *res judicata* effect and to eliminate the procedural complexities of [Rule 23](b)(3) which serve no useful purpose under (b)(2)." *Halford*, 161 F.R.D. at 20-21 (quoting *Wetzel v. Liberty Mutual Ins. Co.*, 508 F.2d 239, 253 (3d Cir. 1975)). Because this Settlement only involves injunctive relief, without release of the Class's damages claims, resolution of this matter does not warrant the Court's exercise of its discretion to direct notice to the class under Rule 23(c)(2)(A) of the Federal Rules of Civil Procedure. *See Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 413 (5th Cir. 1998) ("the drafters of Rule 23 found it unnecessary to provide (b)(1) and (b)(2) class members with the absolute right to notice"). Rule 23(b)(2) settlements do not require notice because "no member has the right to opt out of an action certified

under Rule 23(b)(2)." *Olvera-Morales v. Int'l Labor Mgmt. Corp.*, 246 F.R.D. 250, 259 (M.D.N.C. 2007). Notice, therefore, serves no useful purpose for this Rule 23(b)(2) settlement.

Nor would notice benefit the Class. Ringleader will perform the injunctive relief, including deleting all information obtained from users who opted out of the advertising platform, with no user intervention. The key reason for this lawsuit and Settlement was concern over privacy rights of those who did not want to be tracked by Ringleader. Indeed, notice to the class would undermine the Class claims here: Distributing notice to these consumers would require Ringleader's use of its database to communicate with persons who do not want to be tracked— precisely the actions these suits were meant to preclude.

## IV.   SETTLEMENT WARRANTS FINAL APPROVAL

Under Federal Rule of Civil Procedure 23(e), "[t]he court must approve any Settlement, voluntary dismissal, or compromise of the claims, issues or defenses of a certified class" and such approval may occur "only after a hearing and on finding that the Settlement, voluntary dismissal or compromise is fair, reasonable, and adequate." Fed. R. Civ. P. 23. In this Circuit, courts allow for more flexibility in deciding whether to grant certification. *Sims v. Bank of America Corp.*, No. 06-CV-5991, 2008 WL 479988 *6 (E.D.N.Y.). Unlike Settlements releasing the Class's rights to damages claims, the stringent analysis required under Rule 23(e)(2) is not necessary here.

This Settlement was reached by experienced counsel after private mediation and extensive arm's-length negotiation. Accordingly, the Court's analysis of the factors listed below should be examined with a presumption that the Settlement is fair.[1]

---

[1] There is little authority setting forth the approval standard in a case such as this for which Rule 23(e) requires no final fairness hearing. Therefore, in an abundance of caution, we analyze the higher standard of 23(e)(2) that requires the settlement to be fair, reasonable, and adequate.

It is well-settled that in analyzing the fairness, reasonableness, and adequacy of a class action settlement, the Court may consider the following, non-exhaustive, list of factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the Class to the settlement; (3) the stage of the proceedings and discovery completed; (4) the risks of establishing liability and damages; (5) the risks of maintaining class action status; (6) the ability of the defendant to withstand greater judgment; (7) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Torres v. Gristede's Operating Corp.,* 2010 WL 5507892 *4 (S.D.N.Y.) (*citing City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974)). In the instant case, each factor militates in favor of approving the Settlement.

## A.      Complexity, Expense and Duration of Litigation

The complex factual and legal issues in this case involve an evolving technology and unique issues of law. It is certain that the expense, duration and complexity that would result from the claims and defenses alleged in this litigation would be substantial. It would be necessary to undertake full document and deposition discovery, expert discovery, and dispositive motion practice at the conclusion of discovery. Significant costs would be incurred were this matter to proceed to trial, including expenses for expert witnesses, technical consultants, and the myriad of other costs necessitated by the trial of a class action. (Stampley Decl. ¶ 32-38). Given the complexity of the issues, the defeated party would likely appeal.

These predictable obstacles to timely resolution must be considered in light of risks with less certain consequences, but potentially far more costly outcomes. For example, Plaintiffs face risks of dismissal and in proving liability and damages at trial. Further, critical to the analysis here, it is impossible to predict how a trier of fact would construe the evidence and testimony.

10

Here, the expense, complexity and likely duration of the litigation fully support the Settlement, and the substantial and immediate relief provided to the Class under the Settlement weigh heavily in favor of its approval compared to the inherent risk of continued litigation, trial and appeal.

**B.    Reaction of Class to Settlement**

The Settlement provides wide-ranging injunctive relief that addresses all the primary concerns of the class. The Settlement compels Ringleader Digital, among other things, to delete all personal information for those mobile device users who elect not to have Ringleader Digital or affiliates track personal information, to help develop and then adopt industry standards governing privacy and information security with respect to mobile devices, to require by contract business partners to comply with similar industry standards, and to enhance consumers' ability to elect not to participate in information tracking. The parties agree that the settlement provides the best possible resolution of Plaintiffs' concerns, and the parties are not aware of opposition to the terms of the settlement.

**C.    Stage of Proceedings and Discovery Completed**

This factor requires the Court to consider whether class counsel had "'an adequate appreciation of the merits of the case before negotiating.'" *Torres*, 2010 WL 5507892 at * 5 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004). In this matter, counsel, assisted by Plaintiffs, initiated their own factual and technical investigation for months before filing either of the Complaints. In preparing the case and in preparing for mediation, counsel for both cases conducted research and consulted with experts on issues of industry standards and best practices for managing users' privacy expectations and presenting notice and choice to users in various online environments. In the course of mediation and continuing throughout the negotiation process, representatives of the parties held cooperative discussions and exchanged infor-

11

mation regarding Ringleader's technology and users' experiences. Thus, counsel was more than adequately familiarized with the case to advocate for the interests of the class and effectively negotiate the merits of the Settlement Agreement. (Stampley Decl ¶13; Wilson Decl. ¶13). Accordingly, this factor favors approval of the Settlement.

## D.    Risks in Establishing Liability and Damages

There are a number of risks involved in litigation. The purpose of settlements is to avoid the uncertainty of trial. *In re Painewebber Ltd. P'Ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). The Court must "weigh the likelihood of success by the plaintiffs against the relief offered by the settlement." *Cinelli v. MCS Claim Services, Inc.*, 236 F.R.D. 118, 122 (E.D.N.Y. 2006).

In the absence of the Settlement, and assuming Plaintiffs prevailed in obtaining certification of the class, Plaintiffs would face a number of certain risk-laden obstacles in litigating this matter. Plaintiffs face a significant challenge in proving their case on the merits. Given the complexities and novelties of the issues presented, it is uncertain whether Plaintiffs would be able to establish the liability of Defendants.

Moreover, Plaintiffs would have difficulty establishing their damages theories if this case went to trial. Proving damages in class actions has additional hurdles, including the calculation of damages for each class member. *In re Painewebber*, 171 F.R.D. at 128. The issues raised in this case are unique and there is inherent risk in going forward with a trial.

## E.    Risks in Maintaining Class Action Status

Although Plaintiffs and counsel for the Class believe they would be successful in obtaining certification of an adversarial class absent the Settlement, Defendants have made it clear that, in the absence of the Settlement, they would vigorously oppose certification. Further, even if Plaintiffs were successful in a motion for class certification absent the Settlement, Defendants

could move for decertification of the class before or during trial and likely would challenge certification on appeal. Accordingly, this factor weighs heavily in favor of approving the Settlement because, if at any point the Class failed to become certified, or if certification were reversed, the Class would receive nothing.

### F.     Ability of Defendants to Withstand Greater Judgment

The ability of a defendant to afford a greater judgment may be considered in certain cases, but it is not necessarily determinative of whether a settlement is fair or adequate. *In re Painewebber*, 171 F.R.D. at 129. In an injunctive relief settlement, the ability of the defendant to afford a greater judgment is less of a factor, so it does not weigh for or against approval of this Settlement.

### G.     Reasonableness of Settlement Fund

The final factor to a consideration of the reasonableness of the Settlement is the amount offered by Defendants compared to the maximum potential recovery if Plaintiffs were ultimately to succeed at trial, in light of the strengths and weaknesses of the Plaintiffs' case. *In re Painewebber*, 171 F.R.D. at 130. The certainty and relative immediacy of the benefit under the Settlement, when compared with the risk associated with seeking the further benefits but receiving nothing, further justifies the reasonableness of accepting less than the maximum potential recovery. *See In re Omnivision Tech. Inc.*, 559 F. Supp.2d 1036, 1042 (N.D. Cal. 2008).

Here the Class benefits from mitigation of the effects of Defendants' conduct correction without giving up any rights. Since there was limited, if any, out-of-pocket harm to any plaintiff, the class will receive full relief. As such, the nature and substance of the Settlement favors approval of the Settlement agreement.

**H.      Experience and Adequacy of Proposed Class Counsel**

Under Rule 23 "a court that certifies a class must appoint class counsel . . . [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv). Proposed class counsel have extensive experience in prosecuting class actions and other complex litigation. (Stampley Decl., Exhibit A; Wilson Decl., Exhibit A) Each of the proposed class counsel are well respected members of the legal community, have regularly engaged in major complex litigation, and have had extensive experience in consumer class action lawsuits that are similar in size, scope and complexity to the present case. (*See* Firm Resumes of KamberLaw, LLC, and Wilson Trosclair & Lovins, PLLC, copies of which are attached to the Stampley Declaration and the Wilson Declaration respectively). Accordingly, both Plaintiffs and their counsel have and will adequately represent the class. Further, proposed class counsel have diligently investigated and prosecuted this matter, dedicating substantial resources to the investigation of the claims at issue in the action, and have successfully negotiated the settlement of this matter to the benefit of the class. (Stampley Decl. ¶¶ 9-20; Wilson Decl. ¶5- 15.) Counsel and class representatives, assisted by non-legal experts, spent months considering legal theories as well as investigating factual and technology-related issues regarding Defendant's actions and the potential of such actions to compromise the personal information of the class. (Stampley Decl. ¶3, ¶¶ 32-43; Wilson Decl. ¶ 5;) Accordingly, the Court should appoint Scott A. Kamber and David Stampley of KamberLaw, LLC and Jeremy R. Wilson of Wilson Trosclair & Lovins, PLLC, as class counsel pursuant to Rule 23(g).

## V.   PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES

This case does not involve a common fee award in which the attorneys' fees might detract from the relief available to the Class. Rather, this settlement involves certification under Rule 23(b)(2) and provides for broad injunctive relief, with an attorneys' fee negotiated and agreed at mediation and to be paid separately by Ringleader. (Stampley Decl. ¶ 14; Wilson Decl. ¶16). Furthermore, the amount of attorneys' fees was not discussed or negotiated until the material terms of the Settlement Agreement had been resolved. (Stampley Decl. ¶14; Wilson Decl. ¶17). As discussed below, the sought attorneys' fees are justified by the expenditure of time and expenses in the litigation against Defendants and are consistent with established legal authorities. In total, Plaintiffs seek a total of $670,000 in fees and costs, of which $125,000 Ringleader may defer paying until 2014. This total amount is a multiplier of less than two times the lodestar expended in this matter, while discounting the deferred amount reduces the multiplier even further. Such a multiplier is well below the multiplier that has been found to be reasonable by the Courts of the Second Circuit and is thus fair compensation for the broad-based injunctive relief obtained.

### A.    Lodestar Method Calculation Shows Reasonableness of Plaintiffs' Request

Since this is not a common fund, a lodestar analysis is the appropriate method to determine fees in this case. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d. Cir. 2000).

The first step of a Lodestar analysis is to multiply the number of hours reasonably expended by the appropriate hourly rate. *Strougo v. Bassini*, 258 F. Supp. 2d 254, 263 (S.D.N.Y. 2003). It is proper to calculate attorneys' fees at prevailing rates to compensate for delay in receipt of payment. *See id.* The standard lodestar formula is not limited, however, to the initial mathematical calculation and may be enhanced with a multiplier. *In re Warner Commc'ns Sec. Litig.,* 618 F. Supp. 735, 747 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)("Calculation of

the lodestar, however, is simply the beginning of the analysis."); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d. Cir. 2000). *See also McDaniel v. County of Schenectady*, 595 F.3d 411, 423 (2d Cir. 2010).("The *Goldberger* factors are applicable to the court's reasonableness determination whether a percentage-of-fund or lodestar approach is used").

Federal Courts routinely award multipliers in complex litigation matters and in class action proceedings. *See e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.2005)(applying 3.5 multiplier); *In re Telik, Inc., Sec. Litig.*, 576 F.Supp.2d 570, 593 (S.D.N.Y.2008)("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court"); *Maley v. Del Global Tech. Corp.,* 186 F. Supp.2d 358, 373 (S.D.N.Y 2002)(4.65 multiplier); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (3.97 multiplier: "In recent years multipliers of between 3 and 4.5 have become common."); *Weiss v. Mercedes-Benz of N. Am., Inc.* 899 F. Supp. 1297, 1304 (D.N.J. 1995) (9.3 multiplier), *aff'd*, 66 F.3d 314 (3d Cir. 1995); *In re RJR Nabisco,* M.D.L. Docket No. 818 (MBM), 1992 U.S. Dist. LEXIS 12702, at *15-20 (S.D.N.Y. Aug. 24, 1992) (percentage-based fee representing 6 times lodestar).The review of the relevant factors below demonstrates that the requested multiplier is reasonable. The six *Goldberger* factors to be considered by the Court in ascertaining an appropriate lodestar multiplier are (1) counsel's time and labor; (2) the litigation's magnitude and complexity; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.[2]

---

[22] Although *Goldberger* is a federal case, the factors outlined therein are analogous to those applied under both California and New York law. For instance, in *Graham v. DaimlerChrysler Corp.*, 34 Cal.4th 553, 579 & 582 (2004), the Court held that while "the lodestar is the basic fee for comparable legal services in the community, it may be adjusted by the court" based on various factors including the novelty and difficulty of the questions involved,

**B.   Counsel's Time and Labor**

Class Counsel devoted significant time and effort to the prosecution of this case. As supported by the declarations of David Stampley and Jeremy Wilson, counsel in this lawsuit expended hundreds of hours in the preparation and prosecution of the California and New York lawsuits. (Stampley Decl ¶¶2-7; (Wilson Decl. ¶ 4-13). The attorneys performing work in this litigation are billed at rates that correlate to their respective experience, that are reasonable in the New York, California, and Texas legal markets., and are consistent with prior court approvals of fee applications. (Stampley Decl ¶7; Wilson Decl. ¶ 4).

As outlined in the above-referenced declarations, the initial lodestar for hours expended by counsel in this case equals $381,652.50. The hours expended and the total lodestar amounts are summarized in the chare below:

| Firm | Hours | Lodestar |
| --- | --- | --- |
| KamberLaw, LLC | 320.50 | $ 165,327.50 |
| Wilson Trosclair & Lovins, PLLC | 345.00 | 147,425.00 |
| Law Offices of Joseph H. Malley | 72.25 | $37,800.00 |
| Fears Nachawati Law Firm | 94.00 | $31,100.00 |
| **TOTAL** | **831.75** | **$381,652.50** |

the skill displayed in presenting them, the contingent nature of the case, and whether an exceptional effort produced an exceptional result. *See e.g., Serrano v. Priest*, 20 Cal.3d 25, 43 (1977). In New York, the relevant factors include: (1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government, (2) the standing of counsel at the bar both counsel receiving award and opposing counsel, (3) time and labor spent, (4) magnitude and complexity of the litigation,(5) responsibility undertaken, (6) the amount recovered, (7) the knowledge the court has of conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial, (8) what it would be reasonable for counsel to charge a victorious plaintiff." *Washington Fed. Sav. & Loan Ass'n v. Vill. Mall Townhouses, Inc.,* 90 Misc. 2d 227, 231, 394 N.Y.S.2d 772, 776 (N.Y. Sup. Ct. 1977). Each of these factors essentially evaluate the job done by the attorneys' in the case and a risk versus reward type analysis. Plaintiffs respectfully contend that a multiplier is justified under any of the enumerated factors.

Given the following factors, however, Plaintiffs contend that the negotiated fee which results in a multiplier of 1.75 is well within the range of reasonable (the multiplier is 1.43 if Defendant is unable to pay the amount of fees agreed to be deferred). This relatively modest multiplier is lower than the multipliers award by courts around the country and is considerably less than the multipliers identified above. *In re Telik, Inc. Sec. Litig.,* 576 F. Supp. at 590) (finding requested multiplier of 1.6 to be "low" and "well within the range of reasonableness"); *In re Lloyd's American Trust Fund Litig.* 96 Civ. 1262 (RWS), 2002 U.S. Dist. LEXIS 22663, at *80 (S.D.N.Y. Nov. 26, 2002)([T]he resulting multiplier of 2.09 is at the lower end of the range of multipliers awarded by courts within the Second Circuit.") This multiplier also takes into account the contingent nature of the fee, the risks of litigation, and the results achieved. *See id.* At *81-82(quoting *City of Detroit v. Grinnell Corp*., 495 F.2d 448, 470-71 (2d Cir. 1974)("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.") Further, were costs included in the calculation, the lodestar multiplier would be even lower.

## C.     Magnitude and Complexity of Litigation

These actions were unusual on all fronts. The cases had a number of legal pitfalls, including the fundamental issues of first impression regarding what type of tracking of user information is permissible. These cases also involved complex technological issues requiring significant skill on the part of the law firms handling the cases. Each of these factors weigh in favor of a multiplier of counsel's lodestar hours.

## D.     Litigation Risk

The Second Circuit has "historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement." *See Goldberger,* 209

F.3d at 47. (citing In re "*Agent Orange*" *Prod. Liab. Litig.,* 818 F.2d 226, 232 (2d Cir.1987). In this case, Class counsel undertook this litigation on a wholly contingent basis. This case, while involving important privacy rights of the class members, also involved a number of difficult legal issues. It was only through class counsel's willingness to accept the risks of this litigation that class members have obtained the important and broad injunctive provisions that will continue to protect their legal rights for years to come. There was no guarantee of success in this litigation and taking on these cases required counsel to commit to advancing substantial out of pocket expenses.

**E.     Quality of Representation**

The Second Circuit has noted that "quality of representation is best measured by results" *Goldberger*, 209 F.3d at 55. The attorneys involved in this litigation have extensive experience in complex litigation and class action lawsuits, as described above and outlined in the attached declarations. In particular, KamberLaw has been at the vanguard of the intersection of technology and privacy in cases across the country and has achieved significant results in this area for over a decade, with its founding partner resolving what is believed to be the first internet privacy class action in 1998. Scott A. Kamber also served as lead counsel in the successful resolution of the seminal *In re CD Technologies Litig.* that was resolved in this District. Most recently, KamberLaw was Class Counsel in *Lane v. Facebook*, which resolved for $9.5 million dollars in the Northern District of California and the pending resolution of consolidated cases addressing privacy issues with the use of flash cookies to track personal information on users in the Central District of California (approval pending).

As discussed in more detail above, the resolution of this case involved substantial and far reaching injunctive relief that will serve to protect the Class's privacy rights for years to come.

**F.      Requested Fee in Relation to the Settlement**

Plaintiffs respectfully submit the proposed Settlement is an excellent result for the class members. The relief obtained through this Settlement provides extensive and continuing injunctive relief for the Class's protection, as outlined above. This protection does not come at the cost of class members' rights to damages. In light of the significant benefit to a nationwide class, Plaintiffs submit that the compensation provided for the five law firms involved in this litigation is fair and reasonable.

**G.      Public Policy Considerations**

Public policy considerations clearly cut in favor of an award of fees and expenses in the amount sought by Plaintiffs. This lawsuit involves important privacy rights of litigants that might go largely unprotected if not for the efforts of counsel in this litigation. Plaintiffs have achieved significant protection for the proposed class in a way that does not eliminate the class's rights to individual damages.

Furthermore, unlike a common-fund settlement, which requires heightened scrutiny of the sought attorneys' fees, the attorneys' fees in this case do not in any way diminish the benefits to the Class. Because the attorneys' fees in this Settlement are to be paid by Ringleader separately from the injunctive relief, the Court need be less concerned with scrutinizing the sought fee amounts. *See McBean v. City of New York*, 233 F.R.D. 377, (S.D.N.Y. 2000) ("If . . . money paid to attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members."); *See also Dupler v. Costco Wholesale Corp.*, 705 F. Supp. 2d 231, 243 (E.D.N.Y. 2010).

Furthermore, that the agreed upon fees were the result of arms length negotiation, conducted through the use of an experienced mediator only *after* the resolution of the substantial

20

terms of the proposed injunctive relief as outlined in the Settlement Agreement, weighs in favor of approval of the requested fee. *See Dupler*, 705 F. Supp. 2d at 244 ("the fact that the parties did not negotiate the issue of attorneys' fees until after deciding on the benefit to the class weighs in favor of the reasonableness of the fees"). As observed by the Second Circuit:

> [w]here . . . the amount of the fees is important to the party paying them, as well as to the attorney recipient, it seems to the author of this opinion that an agreement 'not to oppose' an application for fees up to a point is essential to completion of the settlement, because the defendants want to know their total maximum exposure and the plaintiffs do not want to be sandbagged. It is difficult to see how this could be left entirely to the court for determination after the settlement.

*Malchman v. Davis*, 761 F.2d 893, 905 n.5 (2d Cir. 1985) (*abrogated* on other grounds, *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). In this case, defendants had every incentive to minimize the amount paid as attorneys' fees, yet agreed to the sought fees. As such, Courts should grant some deference to what is essentially a market price for the attorneys' fees in this litigation.

For these reasons, Plaintiffs respectfully contend that the sought fees are reasonable for the effort expended by counsel in this matter and are fair when judged in light of the significant relief obtained on behalf of the Class in this litigation. Each of the above factors weighs in favor of the fee award and Plaintiffs respectfully request that the Court grant to full amount of the agreed attorneys' fees and costs.

## VI.   CONCLUSION

For the foregoing reasons in this unopposed motion, Plaintiffs respectfully ask that the Court grant final approval of the proposed Settlement and grant such further relief the Court deems reasonable and just.

Dated: Dated: February 22, 2011                    Respectfully submitted,


                                         KamberLaw, LLC

                   By: s/David A. Stampley _____

                                         David A. Stampley
                                         100 Wall Street, 23rd Floor
                                         New York, New York 10005
                                         Telephone:  (212) 920-3072
                                         Facsimile:  (212) 920-3081

                                         One of the attorneys for Plaintiffs, individually and
                                         on behalf of a class of similarly situated individuals

Scott A. Kamber
skamber@kamberlaw.com
Dana B. Rubin
drubin@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, New York 10005
Telephone:  (212) 920-3072
Facsimile:  (212) 920-3081

Joseph H. Malley (not admitted)
malleylaw@gmail.com
Law Office of Joseph H. Malley
1045 North Zang Boulevard
Dallas, Texas 75208
Telephone:  (214) 943-6100

Jeremy R. Wilson (not admitted)
Wilson, Trosclair & Lovins, PLLC
302 N. Market St., Suite 501
Dallas, Texas 75202
Telephone:  (214) 484-1930
Facsimile: (214) 276-1476